IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

YOUBYOUNG PARK,

       Plaintiff,

vs.                                    Civ. No. 11-987 KG/RHS

ADAM GAITAN, JOHN DYKES,
& JOHN BARRICKLOW,
in their individual capacities,

       Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

This matter comes before the Court upon Defendants Gaitan's, Dyke's and Barricklow's Motion for Summary Judgment (Motion for Summary Judgment) and their memorandum brief in support of the Motion for Summary Judgment, both filed on December 7, 2012.  (Docs. 37 and 38).   On December 24, 2012, Plaintiff filed a response to the Motion for Summary Judgment and on January 11, 2013, Defendants filed a reply.  (Docs. 42 and 47).   Having reviewed the Motion for Summary Judgment, the accompanying briefs, and the evidence of record, the Court grants the Motion for Summary Judgment in part in that:  the Fourteenth Amendment claims brought in Counts I and II of the First Amended Complaint for Violation of Civil Rights (First Amended Complaint) (Doc. 54) are dismissed without prejudice; the Fourth Amendment claims brought in Counts I and II are dismissed with prejudice; Count III is dismissed with prejudice; and Defendants' request for an award of attorney's fees and costs is denied.

*A.  The First Amended Complaint*

Although the Motion for Summary Judgment addresses claims which Plaintiff raised in his original complaint, Plaintiff brings those same claims in the First Amended Complaint.

Consequently, the Motion for Summary Judgment is not moot and the Court will decide the Motion for Summary Judgment.

This unlawful arrest and excessive force lawsuit arises from the arrest of Plaintiff, a native of South Korea, on November 3, 2010, at Plaintiff's place of business, Y.B. Laundromat/Shoe Mart (Laundromat), on the charge of knowingly resisting a law enforcement officer.[1]  *See* NMSA 1978, § 30-22-1(A) (1963).  Plaintiff brings this lawsuit under 42 U.S.C. § 1983 and the New Mexico Tort Claims Act (NMTCA) against employees of the Bernalillo County Sheriff's Office (BCSO) in their individual capacities.  In Count I, Plaintiff alleges Section 1983 claims against all Defendants for an unlawful seizure in violation of the Fourth and Fourteenth Amendments.  In Count II, Plaintiff alleges Section 1983 claims against all Defendants for excessive use of force in violation of the Fourth and Fourteenth Amendments.  In Count III, Plaintiff alleges NMTCA claims against all Defendants for false arrest, false imprisonment, assault, and battery.  Finally, in Count IV, Plaintiff alleges a Section 1983 claim against Defendant Gaitan for violation of the First Amendment.

Defendants now move for summary judgment on Counts I and II on qualified immunity grounds, and for summary judgment on Count III.  Should Defendants prevail on the Motion for Summary Judgment, Defendants seek an award of attorney's fees and costs.  Plaintiff opposes the Motion for Summary Judgment in its entirety.

---

[1] A state judge subsequently granted Defendant Adam Gaitan's request to dismiss that charge. (Doc. 38-2) at 85.

*B. Summary Judgment Standard of Review*

Summary judgment is appropriate if there is no genuine dispute as to a material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).[2] When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991).  An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant. *Kaul v. Stephan*, 83 F.3d 1208, 1212 (10th Cir.1996) (citation omitted).

When a defendant moves for summary judgment on the basis of a qualified immunity defense, the Court "still view[s] the facts in the light most favorable to the non-moving party and resolve[s] all factual disputes and reasonable inferences in its favor." *Estate of Booker v. Gomez*, ___ F.3d ___,  2014 WL 929157 *3 (10th Cir.).  Unlike other affirmative defenses, the plaintiff bears the burden of overcoming the defense of qualified immunity.  *Id*.  At the summary judgment stage, the Court "must grant qualified immunity unless the plaintiff can show (1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of the defendant's conduct."  *Id*.

---

[2]Rule 56 was amended effective December 1, 2010, but the standard for granting summary judgment remains unchanged.

*C.  Facts and Reasonable Inferences Viewed in the Light Most Favorable to Plaintiff*

Plaintiff's first language is Korean.  Plaintiff states that he cannot communicate in English with his daughter unless her mother translates and that he needs the help of his son to translate English. (Doc. 42-1) at 24 and 108.  Plaintiff's wife, however, notes that Plaintiff can speak in broken English.  (Doc. 42-2) at 6.

On the morning of November 3, 2010, Defendant Gaitan, a BCSO detective, went to the Laundromat to request if he could view a surveillance video tape recorded at the Laundromat. Defendant Gaitan believed that the video tape could possibly shed light on an alleged alibi connected with a stabbing incident which occurred elsewhere.[3]  (Doc. 38-1) at 34.  When Defendant Gaitan entered the Laundromat, he was dressed in plain clothes, but Plaintiff saw Defendant Gaitan's BCSO badge and gun.  (Doc. 42-1) at 31; (Doc. 38-1) at 46-47.  Plaintiff thought that the badge could have been either a police or security badge.  (Doc. 42-1) at 31. Plaintiff also did not clearly hear what Defendant Gaitan said when he identified himself and Plaintiff thought Defendant Gaitan was a security officer.  *Id*. at 30-31.

Defendant Gaitan stated to Plaintiff, "Show me your video."  *Id.* at 57.  At his deposition, Plaintiff testified that he understood Defendant Gaitan's statement about wanting to see the video tape.  *Id*. at 38.  Plaintiff responded by stating, "No."  *Id.* at 57.  Plaintiff believed that Defendant Gaitan was asking about an accident, but Plaintiff did not know of any accident and said as much to Defendant Gaitan.  *Id.* at 31; (Doc. 42-6) at 2).  Because Plaintiff thought Defendant Gaitan was not a police officer, Plaintiff was not going to show Defendant Gaitan any surveillance video tapes in case he intended to steal from the store.  (Doc. 42-1) at 37.  Although Plaintiff spoke in

---

[3] Plaintiff had no personal knowledge of the stabbing.

broken English, Defendant Gaitan did not think there was a need for an interpreter because Plaintiff responded appropriately to his requests.  (Doc. 38-1) at 36-37.

As Defendant Gaitan was leaving the Laundromat, Defendant Gaitan told Plaintiff that if he did not produce the video tape, he would go to jail.  (Doc. 42-1) at 38.  At his deposition, Plaintiff testified that he understood what Defendant Gaitan said about going to jail for not producing the video tape.  *Id.*  Defendant Gaitan also left a note with Plaintiff that stated:  "If you are unwilling to assist me with my investigation I will get a search warrant for your property." (Doc. 42-3).  Plaintiff did not testify or declare that he did not later read the note or that he did not have someone read it to him.[4]  At the end of this encounter with Defendant Gaitan, Plaintiff still did not believe that Defendant Gaitan was a police officer. (Doc. 42-1) at 38.  Defendant Gaitan's interaction with Plaintiff lasted approximately four minutes.  *See* Ex. 7 (surveillance video CD attached to (Doc. 42)).

On the afternoon of November 3, 2010, Defendant Gaitan returned to the Laundromat with a signed search warrant for the video tape and recording equipment.[5]  Defendant Gaitan was accompanied by BCSO detectives Kyle Hartsock, Charles Tuberville, and Randy Herring.  (Doc. 38-1) at 39-42.  These detectives were dressed in plain clothes and arrived at the Laundromat in an unmarked vehicle.  *Id.* at 46-47.  Defendant Gaitan also requested a marked BCSO patrol unit to go to the Laundromat so that there would be no question about who was there.  *Id.* at 43. Defendants John Barricklow and John Dykes, uniformed BCSO deputies with badges displayed, responded to Defendant Gaitan's request and parked their marked patrol unit in front of the

---

[4] Plaintiff's wife claims that Plaintiff could not read the note because he cannot read cursive writing.  (Doc. 42-2) at 10.  Defendant Gaitan, however, did not write the note with cursive handwriting.  *See* (Doc. 42-3).

[5] The parties do not dispute the legality of the search warrant.

Laundromat so that it would be visible. *Id*. at 45 and 48; (Doc. 38-3) at 18; (Doc. 38-4) at 27.

Plaintiff did not testify or declare that he did not recognize Defendants Barricklow and Dykes'

uniforms as belonging to law enforcement officers[6] nor did he testify or declare that he did not

see the marked patrol unit parked in front of the Laundromat.[7]

When Defendants went into the Laundromat, Plaintiff was seated behind his desk.

Defendant Gaitan briefly showed Plaintiff a paper, without handing Plaintiff the paper, and

Defendant Gaitan spoke with Plaintiff for a matter of several seconds. *See* Ex. 7 (surveillance

video CD attached to (Doc. 42)). This entire encounter lasted approximately 30 seconds. *Id*.

Plaintiff did not have time to ask the officers for an explanation of what was going on nor did he

see or read the search warrant until after he was released from jail.[8] (Doc. 42-1) at 61-62 and 64;

(Doc. 42-6) at 3. Plaintiff does not deny that he once again refused to show Defendant Gaitan

the video tape. *See* (Doc. 38-1) at 52. However, if Plaintiff had known that Defendant Gaitan

had a search warrant, Plaintiff would have shown him the video tape.[9] (Doc. 42-1) at 61.

After Plaintiff refused to produce the video tape, Defendant Gaitan and Defendant Dykes

lifted Plaintiff from his chair by the elbows and held him by the arms to escort Plaintiff outside

---

[6] Plaintiff's wife testified at her deposition that she would not have recognized the khaki colored BCSO deputies' uniforms as belonging to law enforcement officers because she has only encountered Albuquerque Police Department officers who wear dark uniforms. (Doc. 42-2) at 26-27. Plaintiff's wife did not testify that Plaintiff was also unaware of the khaki colored uniforms worn by BCSO deputies.

[7] Plaintiff claims that the video surveillance monitors did not show the marked patrol unit. The fact that the monitors did not capture the marked patrol unit's image does not necessarily mean that Plaintiff did not see the marked patrol unit from the Laundromat.

[8] Defendants claim that Defendant Gaitan showed Plaintiff a copy of the search warrant and explained the search warrant. (Doc. 38-4) at 27-28.

[9] Defendant Barricklow photographed a copy of the search warrant and the note to Plaintiff while the officers were executing the search warrant at the Laundromat. (Doc. 38-3) at 32-33; (Doc. 38-8).

of the Laundromat so that the detectives could execute the search warrant.  *See* Ex. 7

(surveillance video CD attached to (Doc. 42)).  *See also* (Doc. 38-1) at 53; (Doc. 38-4) at 29.

Before Plaintiff reached the door, Plaintiff "forcefully" fought back to keep from leaving the

Laundromat, .i.e., he tensed his arms, braced his legs, and tried to pull his arms away, because he

did not want to leave the Laundromat unattended and because he did not know who the officers

were.  (Doc. 42-1) at 50; (Doc. 42-5) at 53-54.  At that point, Defendants Gaitan and Dykes

unsuccessfully tried to put Plaintiff on the ground in a face down position.  (Doc. 42-5) at 54.

Defendant Gaitan then gave a knee strike to the side of Plaintiff's body to bring him down to the

floor so he could be handcuffed.[10]  *Id.*  Once Plaintiff was handcuffed, Defendant  Dykes placed

Plaintiff in the back of the marked patrol unit.  Defendant Barricklow, however, never touched

Plaintiff.  (Doc. 38-3) at 22.  Plaintiff's physical resistance to being escorted outside of the

Laundromat prompted Defendants Dykes and Barricklow to charge Plaintiff with knowingly

resisting an officer and to book him into jail.  (Doc. 42-7) at 25; (Doc. 38-3) at 20; (Doc. 38-5) at

3.

        While waiting in the back of the patrol unit, Plaintiff told an officer that he had a dog.

(Doc. 42-6) at 3.  Consequently, one of the officers took the dog from the store.  (Doc. 42-1) at

71-72.  Plaintiff understood from one of the officers that the dog was taken to a shelter.  *Id.* at 72.

Defendant Gaitan also asked Plaintiff for a contact telephone number so that Defendant Gaitan

could call someone to take custody of the store. (Doc. 38-1) at 68.  Plaintiff responded to

Defendant Gaitan's question by giving Defendant Gaitan his wife's telephone number.  *Id.*

---

[10] Plaintiff claims that once he was on the ground, officers stepped on his knee, back, and
shoulder.  (Doc. 42-1) at 69.  The video depiction, however, does not show officers stepping on
Plaintiff while he was on the ground.  Ex. 7 (attached to (Doc. 42)).

Defendant Gaitan noted that although Plaintiff was speaking in broken English, he was giving responsive answers to questions and commands.  *Id.* at 67.

Defendant Barricklow subsequently joined Plaintiff and Defendant Dykes in the marked patrol unit.  Defendant Barricklow observed that Plaintiff was having "a hard time" understanding English but that Plaintiff understood questions and was able to respond to the questions.  (Doc. 42-7) at 24.  Plaintiff also asked various questions of Defendant Dykes and Defendant Dykes answered those questions.  (Doc. 38-4) at 42.  Defendant Dykes further observed that although Plaintiff spoke in broken English, Defendant Dykes was, nonetheless, able to engage Plaintiff in a conversation about Plaintiff's first name and that Plaintiff's communication was understandable.  *Id.* at 49.  Moreover, Plaintiff told Defendant Dykes where his business keys were so that the officers could lock up the Laundromat, which they did.  (Doc. 38-1) at 72; (Doc. 38-4) at 47; (Doc. 42-1) at 73.  An officer also responded to Plaintiff's complaint that the handcuffs were too tight by loosening the handcuffs.  (Doc. 42-1) at 69 and 73.

At some point before officers placed Plaintiff in the marked patrol unit, Defendant Gaitan asked Defendant Dykes to turn on his belt tape in case Plaintiff's broken English became an issue.[11]  (Doc. 38-1) at 67.  After Plaintiff was in custody, Detective Herring unsuccessfully called dispatch asking for a Korean translator.  *Id.* at 70.  While still at the Laundromat, Defendant Barricklow also unsuccessfully tried to contact a Korean friend to help translate.  (Doc. 38-3) at 27-28.  Moreover, officers attempted contacting family members to make sure Plaintiff understood the situation.  (Doc. 42-7) at 24.

---

[11] There is no evidence in the record of a belt tape recording.

Once Plaintiff was at the jail, he informed a jail employee that he suffers from sleep apnea requiring the use of a machine and from high blood pressure for which he takes medication.[12]  (Doc. 42-1) at 103; (Doc. 38-6) at 1.  In addition, Plaintiff identified the pharmacy he uses.  (Doc. 38-6) at 1.

D.  Discussion

1.  Counts I and II:  the Fourteenth Amendment Unlawful Seizure and Excessive Force Claims

Although Defendants move to dismiss the Section 1983 unlawful seizure and excessive force claims in full, the Motion for Summary focuses only on the Fourth Amendment claims and does not address the accompanying Fourteenth Amendment claims.  Before discussing the Fourth Amendment claims, the Court will review the Fourteenth Amendment claims *sua sponte* to determine if they survive Fed. R. Civ. P. 12(b)(6) scrutiny.  *See Hall v.Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (court may dismiss complaint *sua sponte* under Rule 12 (b)(6) for failure to state a claim if "it is 'patently obvious' that the plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.") (quoting *McKinney v. Oklahoma, Dep't of Human Services*, 925 F.2d 363, 365 (10th Cir. 1991)).

a.  Fourteenth Amendment Unlawful Seizure Claims

It is well-established that if "a particular [Constitutional] Amendment provides an explicit textual source of constitutional protections against a particular sort of government behavior, that Amendment, not the more generalized notion of [Fourteenth Amendment] substantive due process, must be the guide for analyzing these claims."  *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (internal quotation marks omitted)).  In the context of unlawful seizures,

---

[12] Plaintiff did not fill out a medical history and screening form, written in English.  (Doc. 38-6) at 1-2; (Doc. 42-1) at 104.  A jail employee filled out the form after learning of Plaintiff's sleep apnea and high blood pressure.  (Doc. 42-1) at 103.

the Fourth Amendment is the appropriate Amendment to apply when the government behavior at issue "lead[s] up to and include[es] an arrest of a citizen previously at liberty…." *Porro v. Barnes*, 624 F.3d 1322, 1325 (10th Cir. 2010).  That is the case here and so the applicable Amendment is the Fourth Amendment and not the Fourteenth Amendment.  Hence, the Court will dismiss the Fourteenth Amendment unlawful seizure claims without prejudice.

### b.  Fourteenth Amendment Excessive Force Claims

The Fourth Amendment is also the appropriate Amendment to apply when one contends that the government used excessive force in the arrest of a citizen.  *Id.*  Moreover, the Fourth Amendment governs when an officer uses excessive force after the warrantless arrest of a person but prior to that person being "brought before a judicial officer for a determination of probable cause to arrest."  *See Frohmader v. Wayne*, 958 F.2d 1024, 1026 (10th Cir. 1992).  In this case, whether Plaintiff's warrantless arrest occurred when Defendants Gaitan and Dykes lifted Plaintiff from his chair or when Defendant Gaitan brought Plaintiff to the ground to be handcuffed, the applicable Amendment is the Fourth Amendment, not the Fourteenth Amendment.  The Court will, therefore, dismiss the Fourteenth Amendment excessive force claims without prejudice.

### 2.  Count I:  the Fourth Amendment Unlawful Seizure Claims

Defendants argue first that they are entitled to qualified immunity on the Fourth Amendment unlawful seizure claims.  In asserting that Plaintiff has failed to show that Defendants violated the Fourth Amendment's prohibition against unlawful seizures, Defendants make the following arguments:  (1) Defendants had the authority to detain Plaintiff while executing the search warrant; (2) *Boydston v. Isom*, 224 Fed. Appx. 810 (10th Cir. 2007), a New Mexico federal case analogous to this one, demonstrates that Defendants had probable cause to

arrest Plaintiff and, therefore, no Fourth Amendment violation occurred; and (3) regardless of *Boydston* and despite Plaintiff's contention that he did not know Defendants were police officers, Defendants still had probable cause to arrest Plaintiff.

### a. Detention While Executing a Search Warrant

Police officers are authorized to detain persons found on a property "subject to a lawful search warrant for 'contraband' materials, incidental to the officer's execution of the warrant." *Denver Justice and Peace Committee, Inc. v. City of Golden*, 405 F.3d 923, 929 (10th Cir. 2005) (quoting *Muehler v. Mena*, 544 U.S. 93, 98 (2005)).  This authority to detain while executing a search warrant, however, does not apply when the persons at the property subject to the search warrant are not implicated in a crime, the situation is not "inherently dangerous," and "the warrant authorizes a search for mere evidence at the premises of a party whose possession of the materials sought is not a crime." *See id*. at 931.  In this case, it is undisputed that (1) Plaintiff was not implicated in a crime; (2) the situation at the Laundromat was not inherently dangerous; and (3) Plaintiff  lawfully possessed the video tape.  Consequently, as a matter of law, Defendants cannot justify their detention of Plaintiff based on the mere execution of the search warrant.

### b. The Boydston Case

The issue in *Boydston* was whether the defendants had probable cause to file charges against the plaintiff.  224 Fed. Appx. at 814.  The Tenth Circuit Court of Appeals explained probable cause as follows:

> [p]robable cause exists where the facts and circumstances within an officer's knowledge and of which he had reasonably trustworthy information are sufficient to warrant a prudent [officer] in believing that an offense has been or is being committed.  This is an objective standard; the subjective belief of an individual officer as to whether there is probable cause is not dispositive.  Importantly, probable cause does not require facts sufficient for a finding of guilt.

11

*Id.* (internal quotation marks and citations omitted).

In *Boydston*, the defendants went to the plaintiff's business during normal business hours to request access to records on temporary license plate numbers.  Under state law, the plaintiff was required to keep these records and to have them available for inspection.  The plaintiff refused to allow the defendants access to the records because he thought the records were private in nature and he would have to consult an attorney before releasing the records to the defendants. The defendants subsequently charged the plaintiff for violating the state law regarding inspection of records pertaining to temporary license plate numbers and for resisting, evading, or obstructing officers in the execution of their lawful duties.  Unlike the resisting charge in this case, the resisting charge in *Boydston* did not have a *mens rea* requirement.  *See id.* at 816.

The Tenth Circuit held that "a prudent officer would be reasonable in his belief that Mr. Boydston violated the law requiring him to provide access to the records and the law prohibiting a person from 'resisting' a peace officer in the lawful discharge of his duties."  *Id.* at 815.  The Tenth Circuit also concluded that the plaintiff's justification for denying access to the records did "not affect the probable cause determination." *Id.* at 816 (citing *Romero v. Fay*, 45 F.3d 1472, 1481 (10th Cir. 1995) (Tenth Circuit noted that officers were "under no obligation to forego arresting Plaintiff or release him merely because he said he was innocent.").  In line with this reasoning, the Tenth Circuit further decided that the following issues of fact: (1) whether the plaintiff was aware that the defendants were police officers and (2) whether the defendants informed the plaintiff that his actions violated the law, were not material to the issue of probable cause.  *Id.* at 815-16.  The Tenth Circuit explained that probable cause is determined from "'the circumstances as they would have appeared to prudent, cautious and trained *police officers*.'"  *Id.* at 816 (quoting *United States v. Davis*, 197 F.3d 1048, 1051 (10th Cir. 1999) (quotation

omitted)).  In addition, "[i]gnorance of the law is no excuse for a violation of the law—one is guilty of a crime if he intends to engage in the conduct prohibited by the statute."  *Id.*  Finally, the Tenth Circuit rejected the plaintiff's contention that "probable cause was lacking because there was no proof of criminal intent to violate the obstruction statute."  *Id.*  The Tenth Circuit noted that the resisting provision at issue did not have a specific requirement for *mens rea*.  *Id.*

Plaintiff attempts to discredit and distinguish *Boydston* on several grounds.  First, Plaintiff notes that *Boydston* is an unpublished opinion without precedential value.  Unpublished Tenth Circuit cases are indeed not precedential, "but they may be cited for their persuasive value."  10th Cir. R. 32.1(A).  Second, Plaintiff contends that the discussion of probable cause regarding the resisting charge is *dicta* because it was, nonetheless, a crime under state law to deny access to the records.  This is a disingenuous contention considering that the Tenth Circuit was tasked with deciding whether the defendants had probable cause to bring either the resisting charge or the charge based on violation of the state records law.  Third, Plaintiff argues that, in contrast to *Boydston*, Defendants here did not have the authority to inspect or seize Plaintiff's video surveillance equipment.  Plaintiff, however, ignores the fact that Defendants had a presumably lawful search warrant which allowed them to inspect or seize Plaintiff's video surveillance equipment.  Finally, Plaintiff asserts that the Tenth Circuit's discussion on probable cause with respect to the resisting charge is *dicta* because the resisting charge at issue in *Boydston* does not have a *mens rea* requirement while the resisting charge in this case requires that the person "knowingly" resist an officer.  *See* § 30-22-1(A) (resisting an officer consists of "knowingly" resisting an officer attempting to "execute any process" of a state court).  The Tenth Circuit's discussion on the lack of a *mens rea* requirement, however, is separate and distinct from the rest of the Tenth Circuit's probable cause discussion and does not affect the persuasive

value of those other portions of the Tenth Circuit's opinion.  In sum, Plaintiff has failed to convince the Court that *Boydston* has little or no persuasive value in evaluating the probable cause issue in this case.

### c. Probable Cause

Although *Boydston* is closely analogous to this lawsuit and provides persuasive support for finding that Defendants had probable cause to arrest Plaintiff and, thus, did not violate Plaintiff's Fourth Amendment right to be free from an unlawful seizure, the Court will also independently analyze the probable cause issue.  Aside from citing *Boydston*, Defendants make the following arguments to support their contention that they had probable cause to arrest Plaintiff:  (1)  Plaintiff's assertion that he did not believe that Defendants were law enforcement officers is irrelevant to the probable cause analysis; and (2) Defendants had probable cause to arrest Plaintiff on three separate occasions:  (a) when Defendant Gaitan first asked to view the video tape on the morning of November 3, 2010, before he obtained a search warrant; (b) when Defendant Gaitan showed Plaintiff the search warrant; and (c) when Plaintiff physically resisted Defendants Gaitan and Dykes as they attempted to escort Plaintiff outside of the Laundromat.

### (1)  Plaintiff's Belief that Defendants were not Law Enforcement Officers

In *Kee v. Ahlm*, a criminal trespass case, the Tenth Circuit found the following factual disputes irrelevant to a probable cause determination:  (1) whether anyone informed the plaintiff that he was violating a criminal trespass statute; and (2) whether the plaintiff "possessed the requisite state of mind for violating the statute, in light of his testimony that he believed the officers had no lawful basis to remove him from" the property.  219 Fed. Appx. 727, 732 (10th Cir. 2007).  The Tenth Circuit explained that the proper inquiry in determining the existence of probable cause is "how the situation would have appeared to a reasonable officer, based on the

facts known to [the officer] at the time of the arrest….”  *Id.*  The Tenth Circuit further noted that probable cause does not require “an actual violation” of a criminal statute.  *Id.*  Finally, the Tenth Circuit stated that the arresting officer need only possess ‘“reasonably trustworthy information that would lead a reasonable person to believe an offense was committed.”’  *Id.* (quoting *United States v. Patane*, 304 F.3d 1013, 1018 (10th Cir. 2002), *reversed on other grounds*, 542 U.S. 630 (2004)).

Defendants argue that, like *Kee,* Plaintiff’s belief that he was not violating any law by denying Defendant Gaitan’s request to view the video tape and Plaintiff’s belief that Defendants were not law enforcement officers are not relevant to the probable cause determination.  Plaintiff argues, however, that under Section 30-22-1(A) Plaintiff could not be convicted of resisting an officer unless Plaintiff knew that Defendants were law enforcement officers.  *See, e.g., State v. Akers*, 2010-NMCA-103 ¶ 30, 149 N.M. 53.  Nevertheless, as the Tenth Circuit in *Kee* clearly indicated, an actual violation of a criminal statute, in this case Section 30-22-1(A), is not necessary in order for an officer to have probable cause to arrest based on that criminal statute.

Even so, similar to the “knowingly” element for resisting an officer, the New Mexico Supreme Court acknowledged that the “knowing” element of crimes like aggravated assault or battery upon a peace officer can by proved by circumstantial evidence such as an officer being in full uniform, visible display of a badge, driving a marked police vehicle, and identification as a peace officer.  *State v. Nozie*, 2009-NMSC-018 ¶ 32, 146 N.M. 142.  Here, Defendant Gaitan had a visible gun and a visible badge which Plaintiff admitted could have been a police badge .  Defendant Gaitan also identified himself as a police officer the morning of November 3, 2010, albeit Plaintiff did not clearly hear him.  Defendant Gaitan further indicated to Plaintiff that he could go to jail for not producing the video tape, a comment consistent with an officer’s

authority to arrest for resisting an officer.  *See City of Espanola v. Archuleta*, 2010 WL 3997984 *4 (N.M. Ct. App.) (failing to obey an officer's command constitutes resisting an officer). Additionally, the note Defendant Gaitan left with Plaintiff was consistent with an officer's authority to obtain a search warrant.  Moreover, Defendants Dykes and Barricklow were in full uniform with their badges displayed.  Finally, Defendants Dykes and Barricklow parked a marked patrol unit outside of the Laundromat.  Interestingly, Plaintiff has not presented any evidence that (1) he did not read the note or that he did not get someone to read it; (2) he was unaware of what BCSO deputies' uniforms looked like; and (3) he did not see the marked patrol unit from his desk at the Laundromat.  Considering the totality of the above evidence, a reasonable jury could find that Plaintiff "knew" that Defendants were law enforcement officers.

### (2)  Other Probable Cause Evidence

Plaintiff is correct in contending that no probable cause to arrest Plaintiff existed when Defendant Gaitan first requested the video tape and Plaintiff denied that request.  Defendant Gaitan did not have a search warrant at that time and Plaintiff was within his legal right to decline Defendant Gaitan's request.

Plaintiff is also correct in asserting that Defendants Gaitan and Dykes first seized Plaintiff when they lifted Plaintiff up from his chair by the elbows and arms.  It is well-established that an "officer seizes a person for purposes of the Fourth Amendment 'only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'  Ultimately, a seizure requires either the use of physical force by the police officer or submission by the individual to the police officer's assertion of authority." *United States v. Harris*, 313 F.3d 1228, 1234 (10th Cir. 2002) (internal quotation marks and citations omitted).   A reasonable jury could find that a reasonable person physically removed

from a chair and physically escorted toward the exit of his business would believe that he was not free to remain in the business and was, in fact, seized at that point.

Having successfully presented evidence that Defendants Gaitan and Dykes seized Plaintiff when they lifted Plaintiff from his chair, Plaintiff argues that the Defendants did not have probable cause to arrest Plaintiff at that time.  Plaintiff notes that only a matter of seconds expired between the time Defendants entered the Laundromat and Defendants Gaitan and Dykes lifted Plaintiff from his chair.  Plaintiff claims that he did not know in that short time span that Defendants were serving a search warrant nor did he have a chance to ask for an explanation of the situation.  Plaintiff further cites *Keylon v. City of Albuquerque* for the proposition that resisting refers primarily to a physical act of resistance, which did not occur when Defendants Gaitan and Dykes lifted Plaintiff up from his chair.  *See* 535 F.3d 1210, 1216 (10th Cir. 2008).  However, the New Mexico Court of Appeals later clarified that resisting an officer can also include failing to comply with an officer's lawful demand.  *See City of Espanola*, 2010 WL 3997984 at *4.

Viewing the evidence in the light most favorable to Plaintiff, the "facts and circumstances" within Defendant Gaitan's knowledge[13] when he and Defendant Dykes lifted Plaintiff from his chair are as follows:  Defendant Gaitan's gun and badge were visible during his first encounter with Plaintiff which lasted about four minutes; Defendant Gaitan identified himself when he first encountered Plaintiff; Defendant Gaitan asked Plaintiff to view the video tape the morning of November 3, 2010, and Plaintiff appropriately answered that question, in broken English, by declining to produce the video tape; Plaintiff mentioned that he did not know of an accident; Defendant Gaitan told Plaintiff that if he did not produce the video tape, he could

---

[13] The Court examines the probable cause issue from Defendant Gaitan's perspective because he had the most knowledge of the facts and initially seized Plaintiff, along with Defendant Dykes.

go to jail; Defendant Gaitan left a note with Plaintiff explaining that he was going to get a search warrant; when Defendants later entered the Laundromat, Defendant Gaitan had secured a search warrant; Defendants Dykes and Barricklow parked a marked patrol unit in front of the Laundromat; when Defendants entered the Laundromat, Defendant Gaitan's badge was displayed and Defendants Dykes and Barricklow were in full uniform with badges displayed; Defendant Gaitan briefly showed Plaintiff a piece of paper; Plaintiff does not dispute that he refused to produce the video tape; Plaintiff did not have an opportunity to ask for an explanation prior to being lifted up from his chair; and Defendant Gaitan observed that Plaintiff's responses indicated that he was able to communicate in English.  A reasonable jury could find that under the above facts and circumstances a prudent officer would reasonably believe that Plaintiff knowingly resisted Defendant Gaitan by refusing, a second time, to allow him to view the video tape.  Thus, a reasonable jury could find that Defendants had probable cause to arrest Plaintiff before Defendants Gaitan and Dykes lifted Plaintiff up from his chair.  Furthermore, even if Defendant Gaitan mistakenly concluded that there was probable cause to arrest Plaintiff, if that mistake was reasonable, which a reasonable jury could also find considering the facts before Defendant Gaitan, then Defendants are still entitled to qualified immunity.  *See Cortez v. McCauley*, 478 F.3d 1108, 1120 and n. 15 (10th Cir. 2007).

In sum, Plaintiff has not carried his burden of showing that Defendants violated Plaintiff's Fourth Amendment right to be free from unreasonable seizures.  Defendants are, therefore, entitled to qualified immunity with respect to the Fourth Amendment claims.  Hence, the Court will grant summary judgment on those claims and dismiss the Fourth Amendment claims with prejudice.

   *3.  Count II:  Fourth Amendment Excessive Force Claims*

   Next, Defendants argue that they are entitled to qualified immunity on the Fourth

Amendment excessive force claims.  Before addressing the qualified immunity arguments, the

Court determines that Defendant Barricklow is entitled to summary judgment on the Fourth

Amendment excessive force claim brought against him because it is undisputed that Defendant

Barricklow did not touch Plaintiff during or after his arrest.  Accordingly, the Court will dismiss

that claim with prejudice.

   The issue in Fourth Amendment excessive force cases is whether, under the totality of the

circumstances, an officer's use of force was objectively reasonable.  *Graham v. Connor*, 490

U.S. 386, 397 (1989).  This test involves viewing the reasonableness of an officer's use of force

from an "on-scene" perspective."  *Saucier v. Katz*, 533 U.S. 194, 205 (2001), *overruled in part

on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009).  Factors to consider in

determining if use of force was excessive include "'the severity of the crime at issue, whether the

suspect poses an immediate threat to the safety of the officers or other, and whether he is actively

resisting arrest or attempting to evade arrest by flight.'"  *Id*. (quoting *Graham*, 490 U.S. at 396).

In addition, "[i]f an officer reasonably, but mistakenly, believed that a suspect was likely to fight

back, … the officer would be justified in using more force than in fact was needed."  *Id*.

Moreover, "'[n]ot every push or shove, even if it may later seem unnecessary in the peace of a

judge's chambers,' violates the Fourth Amendment."  *Graham*, 490 U.S. at 396 (citation

omitted).  On the other hand, an officer's reckless or deliberate actions during a seizure can

unreasonably create a need to use force.  *Jiron v. City of Lakewood*, 392 F.3d 410, 415 (10th Cir.

2004).  An act is considered reckless if "it reflects a wanton or obdurate disregard or complete

indifference to risk" of harm.  *Medina v. City and County of Denver*, 960 F.2d 1493, 1496 (10th

Cir. 1992), *overruled, in part, on other grounds by Williams v. City & County of Denver,* 99 F.3d 1009, 1014–1015 (10th Cir.1996).   In deciding whether an officer's reckless or deliberate actions unreasonably created a need to use force, "[o]nly events 'immediately connected" with the actual seizure may be considered, and '[m]ere negligent actions precipitating a confrontation would not, of course, be actionable under § 1983.'"   *Id.* (quoting *Sevier v. City of Lawrence*, 60 F.3d 695, 699 and nn. 7-8 (10th Cir. 1995)).   Finally, to succeed on an excessive force claim, a plaintiff must show "some actual injury caused by the unreasonable seizure that is not *de minimus*, be it physical or emotional."   *Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007).

Defendants argue primarily that Plaintiff's injuries from being brought to the ground and handcuffed were *de minimus* and, therefore, cannot sustain an excessive force claim.   The Court, however, need not reach the *de minimus* injury argument considering the Court's rulings on Plaintiff's arguments in support of a finding of excessive force.   Those arguments are that (1) the three *Saucier* factors favor a finding of excessive use of force; and (2) Defendants recklessly and deliberately created an unreasonable need to use force.

### a.  The Saucier Factors

The first *Saucier* factor supports a finding of excessive force.   It is undisputed that the severity of the crime of knowingly resisting an officer is not great; it is a misdemeanor crime. *See* § 30-22-1.   Also, the second *Saucier* factor favors a finding of excessive force because it is undisputed that Plaintiff did not pose an immediate threat of safety to Defendants or others. Next, citing *Keylon v. City of Albuquerque*, Plaintiff argues that any resistance by Plaintiff occurring after Defendants seized Plaintiff, i.e., after Defendants Gaitan and Dykes lifted Plaintiff from his chair, is irrelevant to the third *Saucier* factor.   *See* 535 F.3d 1210 (10th Cir.

2008).  The Tenth Circuit held in *Keylon* that "[t]he only resistance that can provide probable cause for … arrest must, necessarily, precede the arrest."  *Id*. at 1216 n. 1.  That holding, however, pertains to probable cause determinations and is not applicable to a post-arrest claim of excessive force, the claim at hand.  Here, Plaintiff actively resisted his continued arrest by physically tensing up and moving his arms in an attempt to get out of the escort hold and stay in the Laundromat.  At that point, Defendants Gaitan and Dykes could have reasonably believed that Plaintiff was likely to fight back.  In that situation, Defendants Gaitan and Dykes were justified in using more force than was actually needed to restrain Plaintiff.  Wrestling a suspect to the ground, in fact, is appropriate when a suspect is resisting arrest and must be handcuffed. *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 781 (10th Cir. 1993).  Under the totality of those circumstances, a reasonable jury could find that Defendants Gaitan and Dykes' use of force was objectively reasonable.

> *b. Reckless and Deliberate Actions Unreasonably Creating a Need to Use Force*

Plaintiff further argues that Defendants' decision to not obtain a Korean interpreter, Defendants' decision to pull Plaintiff from his chair within 30 seconds of arriving at the Laundromat, and Defendants' decision to escort Plaintiff outside of the Laundromat constituted reckless and deliberate decisions which unreasonably created a need to use force on Plaintiff. Despite Plaintiff's deposition testimony and declaration, and despite Defendant Gaitan, Detective Herring, and Defendant Barricklow's concerns about Plaintiff's understanding of English as reflected by a request to use a belt tape, a request to dispatch for an interpreter, and by an attempt to contact a friend to interpret, it is undisputed that Plaintiff engaged in understandable communications regarding his permission to view the video tape, his dog, contacting his wife, locating the keys to the Laundromat, loosening tight handcuffs, his name and post-arrest

questions posed to Defendant Dykes, and even some medical related questions at the jail.  A reasonable jury could, therefore, find that although Plaintiff spoke broken English and an interpreter would have made communicating with Plaintiff easier, Plaintiff was able to communicate without an interpreter.   A reasonable jury could also find that, regardless of when Defendants Gaitan and Dykes lifted Plaintiff from his chair, Defendants Gaitan and Dykes could not have reasonably known that escorting Plaintiff outside of the Laundromat would result in Plaintiff trying to get out of the escort hold, and, thereby, cause Defendants Gaitan and Dykes to use force on Plaintiff to handcuff him.  Finally, a reasonable jury could find that the circumstances leading up to Plaintiff being taken down to the floor and handcuffed did not reflect a deliberate or even "wanton or obdurate disregard or complete indifference to risk" of harm to Plaintiff.  At most, a reasonable jury could find that Defendants Gaitan and Dykes' conduct might have been negligent.

Plaintiff has not shown that a reasonable jury could find that, under the totality of the circumstances, Defendants Gaitan and Dykes' use of force on Plaintiff was objectively unreasonable.  Plaintiff has, therefore, failed to show that Defendants Gaitan and Dykes violated Plaintiff's right to be free from excessive use of force under the Fourth Amendment.  Accordingly, Defendants Gaitan and Dykes are entitled to summary judgment on the Fourth Amendment excessive force claims and the Court will dismiss those claims with prejudice.

### 4.  Count III:  The NMTCA Claims

#### a.  False Imprisonment and False Arrest Claims

In New Mexico, "[a] defendant possessed of a good faith and reasonable belief in the lawfulness of the action is not liable for false imprisonment or false arrest."  *Fuerschbach v. Southwest Airlines Co.*, 439 F.3d 1197, 1207 (10th Cir. 2006).  It is well-established "that a good

faith defense to false imprisonment and false arrest ordinarily requires a showing of probable cause…." *Id*. at 1208.  As discussed above, a reasonable jury could find that Defendants had probable cause to arrest Plaintiff for knowingly resisting an officer.  Hence, Defendants have a good faith defense against any claim of false imprisonment and false arrest.  Defendants are, therefore, entitled to summary judgment on the NMTCA false imprisonment and false arrest claims.  Thus, the Court will dismiss those claims with prejudice.

> b.  *Assault and Battery Claims*

An officer in New Mexico commits an assault or battery when the officer uses more than necessary force to restrain a person.  *Reynaga v. County of Bernalillo*, 1995 WL 503973 *2 (10th Cir.) (quoting *State v. Kraul*, 1977-NMCA-032 ¶ 27, 90 N.M. 314 (quotation and citation omitted), *cert. denied*, No. 11,370)).   *See also Mead v. O'Connor*, 1959-NMSC-077 ¶ 4, 66 N.M. 170 (officer "is entitled to use such force as was reasonably necessary under all the circumstances of the case.")  Here, as discussed above, a reasonable jury could find that Defendants did not use more force than necessary to restrain Plaintiff when he attempted to get out of the escort hold.  Defendants, therefore, could not be liable for assault and battery. Accordingly, Defendants are entitled to summary judgment on the NMTCA assault and battery claims, and the Court will dismiss those claims with prejudice.

> 5.  *Defendants' Request for an Award of Attorney's Fees and Costs*

Although Defendants have prevailed on their Motion for Summary Judgment, Defendants cite no legal authority in support of their request for an award of attorney's fees and costs.  In addition, Defendants failed to address in their Motion for Summary Judgment whether Plaintiff had stated cognizable Fourteenth Amendment claims.  The Court notes further that Defendants

raised complex issues which Plaintiff competently responded to.  Accordingly, the Court will deny Defendants' request for an award of attorney's fees and costs.

IT IS ORDERED that:

1.  Defendants Gaitan's, Dyke's and Barricklow's Motion for Summary Judgment (Doc. 37) is granted in part;

2.  the Fourteenth Amendment claims brought in Counts I and II of the First Amended Complaint will be dismissed without prejudice;

3.  summary judgment will be entered in Defendants' favor on the Fourth Amendment claims brought in Counts I and II of the First Amended Complaint;

4.  the Fourth Amendment claims brought in Counts I and II of the First Amended Complaint will be dismissed with prejudice;

5.  summary judgment will be entered in Defendants' favor on Count III of the First Amended Complaint;

6.  Counts III will be dismissed with prejudice; and

7.  Defendants' request for an award of attorney's fees and costs is denied.



_____
UNITED STATES DISTRICT JUDGE