IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

YOUBYOUNG PARK,

    Plaintiff,

vs.                                                                         Civ. No. 11-987 KG/CG

ADAM GAITAN, in his
individual capacity,

    Defendant.

## MEMORANDUM OPINION AND ORDER

        This matter comes before the Court upon Defendant Adam Gaitan's Motion for Summary Judgment on Plaintiff's First Amendment Claim (Motion for Summary Judgment) and Defendant Adam Gaitan's Memorandum Brief in Support of His Motion for Summary Judgment on Plaintiff's First Amendment Claim, both filed on August 1, 2013. (Docs. 66 and 67). Plaintiff filed a response on August 23, 2013, and Defendant Gaitan filed a reply on September 19, 2013. (Docs. 70 and 72). On May 12, 2014, Plaintiff filed Plaintiff's Notice of Supplemental Authority. (Doc. 79). Having considered the Motion for Summary Judgment, the accompanying briefs, Plaintiff's Notice of Supplemental Authority, and the material evidence of record, the Court grants the Motion for Summary Judgment.

A.  *Summary of Facts Viewed in the Light Most Favorable to Plaintiff*

        This lawsuit arises from the arrest of Plaintiff, a native of South Korea, on November 3, 2010, at Plaintiff's place of business, Y.B. Laundromat/Shoe Mart (Laundromat), on the charge

of knowingly resisting a law enforcement officer.[1]  Defendant Gaitan believed that a surveillance video recorded at the Laundromat could possibly shed light on an alleged alibi connected with a stabbing which occurred elsewhere.[2]  (Doc. 38-1) at 34.  On the afternoon of November 3, 2010, Defendant Gaitan returned to the Laundromat with a signed search warrant for the surveillance video and video recording equipment.[3]  Defendant Gaitan was accompanied by Bernalillo County Sheriff's Office (BCSO) Detective Kyle Hartsock and other deputies.  (Doc. 38-1) at 39-42.

Defendant Gaitan asked that Hartsock, a detective with experience in digital forensics, accompany him to execute the search warrant in the event Defendant Gaitan needed assistance with the surveillance equipment.  (Doc. 76-1) at 4.  At that time, Hartsock was not yet a certified forensic examiner with the New Mexico Regional Computer Forensics Laboratory and was serving a probationary period under a training officer.  *Id.* at 3.  While in the Laundromat, Hartsock saw a digital video recorder (DVR) and a computer laptop which he recognized as potential sources of the surveillance video.  (Doc. 67-1) at 5.

After Plaintiff refused to produce the surveillance video, Defendant Gaitan and BCSO Officer John Dykes lifted Plaintiff from his chair by the elbows and held him by the arms to escort Plaintiff outside of the Laundromat so that the detectives could execute the search warrant.  *See* Ex. 7 (surveillance video CD attached to (Doc. 42)).  *See also* (Doc. 38-1) at 53; (Doc. 38-4)

---

[1] A state judge subsequently granted Defendant Gaitan's request to dismiss that charge.  (Doc. 38-2) at 85.

[2] Plaintiff had no personal knowledge of the stabbing.

[3] The parties do not dispute the legality of the search warrant.

2

at 29.  Before Plaintiff reached the door, Plaintiff "forcefully" fought back to keep from leaving the Laundromat, i.e., he tensed his arms, braced his legs, and tried to pull his arms away, because he did not want to leave the Laundromat unattended and because he did not know who the officers were.  (Doc. 42-1) at 50; (Doc. 42-5) at 53-54.  At that point, Defendant Gaitan and Dykes unsuccessfully tried to put Plaintiff on the ground in a face down position.  (Doc. 42-5) at 54.  Defendant Gaitan then gave a knee strike to the side of Plaintiff's body to bring him down to the floor so he could be handcuffed.[4]  *Id.*  Once Plaintiff was handcuffed, Dykes placed Plaintiff in the back of a marked patrol unit.  Plaintiff's physical resistance to being escorted outside of the Laundromat prompted officers to charge Plaintiff with knowingly resisting an officer and to book him into jail.  (Doc. 42-7) at 25; (Doc. 38-3) at 20; (Doc. 38-5) at 3.

Once Plaintiff was in custody, Hartsock used "native controls" to view the DVR images.  (Doc. 67-1) at 7.  Hartsock was, however, unable to copy the DVR images and it appeared that the surveillance video did not go back far enough in time to be useful for Defendant Gaitan's investigation of the stabbing.  *Id.*  Hartsock believed that the relevant portion of the surveillance video may have already been deleted or overwritten.  *Id.*  Hartsock did not operate the digital video disc burner located in the DVR.  (Doc. 70-1) at 10-11.  Hartsock then decided to take the DVR and the laptop to the computer forensics laboratory to determine if he could recover any deleted or overwritten video footage related to the stabbing.  (Doc. 67-1) at 7.  *See also* (Doc. 67-

---

[4] Plaintiff claims that once he was on the ground, officers stepped on his knee, back, and shoulder.  (Doc. 42-1) at 69.  The video depiction, however, does not show officers stepping on Plaintiff while he was on the ground.  Ex. 7 (attached to (Doc. 42)).

2) at 1 ("Detective Gaitan specifically requested security camera footage from October 31, 2010 at approximately 1830 hours.").

At the computer forensics laboratory, Hartsock made a copy of the DVR hard drive. (Doc. 67-1) at 8. Hartsock was, however, unable to examine the files on the hardrive. *Id.* In a situation like that, the hardrive could be sent to another laboratory for analysis. *Id.* at 9. Hartsock presented that option to Defendant Gaitan on December 1, 2010, but Defendant Gaitan decided not to pursue that option. *Id.* Hartsock also found no indication that any surveillance video had been saved to the laptop. *Id.* Hartsock completed his investigation on December 6, 2010. *Id.*

"[S]hortly after learning from Detective Hartsock that no video evidence could be retrieved from the equipment," Defendant Gaitan reclaimed the DVR and laptop from the computer forensics laboratory and transported them to the Albuquerque Police Department (APD) Evidence Room. (Doc. 67-3) at ¶ 5. At that point, Defendant Gaitan "believed that the equipment contained no evidentiary value" and he eventually closed the investigation within a matter of weeks after having executed the search warrant for the Laundromat. *Id.* at ¶ 8; (Doc. 33-2) at 3. Defendant Gaitan stated at his deposition that he could have released the equipment back to Plaintiff, but he "honestly forgot." (Doc. 33-2) at 3. Defendant Gaitan also admitted that because he was the affiant on the search warrant it was his responsibility to decide what to do with the property.[5] *Id.* at 4. In fact, under APD Standard Operating Procedure 2-08-12(E)(1)

---

[5] Defendant Gaitan subsequently stated in an affidavit that he believed it was APD's responsibility to respond to requests for the return of evidence and "to determine if and when the evidence was no longer the subject of a criminal investigation and may be returned." (Doc. 67-3) at ¶ 7.

(effective 8/7/2008), "[t]he detective who assumes investigative responsibility for the case shall have authority to release or dispose of case evidence." (Doc. 70-2) at 4.

Sometime after Plaintiff's arrest, Plaintiff's son spoke with someone at the BCSO about the return of the DVR and laptop.[6] (Doc. 67-5) at 4. That person told Plaintiff's son to call the Evidence Room, which he did. *Id.* at 4-5. Having not received the DVR and laptop, Plaintiff installed replacement surveillance video equipment "within a month of the seizure…." *Id.* at 9.

While the DVR and laptop were still at the computer forensics laboratory, on November 15, 2010, Plaintiff's attorney in the criminal case against Plaintiff filed a Request for Discovery and Speed Letter in Metropolitan Court. Plaintiff requested that the State produce, among other things, "tangible objects" which the State "intends to introduce as evidence at trial…." (Doc. 67-4) at ¶ 1. *See also* Rule 5-501(A)(3) NMRA 1998 (2014 ed.) (state must provide defendant with "tangible objects" which "belong to the defendant…."). Typically, the District Attorney's office receives the Speed Letter and the BCSO helps to gather the evidence being requested. (Doc. 70-1) at 9-10. Neither the DVR nor the laptop was produced during the pendency of the criminal case against Plaintiff. (Doc. 67-5) at 5.

Plaintiff finally received the DVR and laptop in December 2012 after Magistrate Judge Robert Hayes Scott ordered their return to Plaintiff. (Doc. 39). Plaintiff subsequently showed the surveillance video to his son, his spouse, his counsel, his counsel's staff, and to Sunghee Lee, who assisted in enabling the video to be viewed. (Doc. 67-5) at 2-3. Plaintiff also provided the surveillance video to opposing counsel and the Court. *Id.* at 3. Plaintiff plans to publish the contents of the surveillance video to the public in the course of this lawsuit. *Id*.

---

[6] Plaintiff speculated that his son he may have spoken with Defendant Gaitan. (Doc. 67-5) at 4-5.

*B. The First Amended Complaint for Violations of Civil Rights (First Amended Complaint) (Doc. 54)*

The Court has already dismissed Counts I, II, and III of the First Amended Complaint. *See* (Doc. 78). The only remaining count is Count IV. In Count IV, Plaintiff brings a 42 U.S.C. § 1983 claim against Defendant Gaitan for allegedly violating Plaintiff's First Amendment right to view, copy, and distribute the surveillance video images of the BCSO deputies' actions on November 3, 2010. (Doc. 54) at ¶ 46. Plaintiff specifically alleges that Defendant Gaitan unreasonably withheld the VCR for a period longer than necessary to complete the investigation of the stabbing and that Defendant Gaitan misrepresented that no data could be retrieved from the VCR. *Id.* at ¶ 47. Plaintiff maintains that Defendant Gaitan's actions resulted in Plaintiff's "inability to promptly view, copy, and distribute video images of the events that transpired in his place of business on or about November 3, 2010;" the loss of the use of the VCR and laptop until December 2012; and "psychological and emotional distress." *Id.* at ¶ 49.

Defendant Gaitan now moves for summary judgment on Count IV on the basis of qualified immunity. Plaintiff opposes the Motion for Summary Judgment in its entirety.

*C. Standard of Review*

When a defendant moves for summary judgment on the basis of a qualified immunity defense, the Court "still view[s] the facts in the light most favorable to the non-moving party and resolve[s] all factual disputes and reasonable inferences in its favor." *Estate of Booker v. Gomez*, 745 F.3d 405, 411(10th Cir. 2014). Unlike other affirmative defenses, the plaintiff bears the burden of overcoming the defense of qualified immunity. *Id.* At the summary judgment stage, the Court "must grant qualified immunity unless the plaintiff can show (1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established

at the time of the defendant's conduct." *Id.* The Court may in its discretion decide which of the two-parts of the qualified immunity test to address first. *Id.* at 412.

*D. Discussion*

Plaintiff argues that Defendant Gaitan's withholding of the VCR for an unreasonable length of time constitutes both a First Amendment prior restraint claim and a First Amendment retaliation claim. First, Plaintiff contends that he has a prior restraint claim because Defendant Gaitan restricted, in advance, Plaintiff's ability to promptly view, copy, and distribute video images of the BCSO deputies' treatment of Plaintiff. A prior restraint claim "is based on a restriction that 'chills potential speech before it happens'…." *Brammer-Hoelter v. Twin Peaks Charter Academy*, 602 F.3d 1175, 1182 (10th Cir. 2010) (internal quotation marks and citation omitted). Here, a reasonable jury, viewing the evidence in the light most favorable to Plaintiff, could not find that withholding the VCR until December 2012 actually chilled Plaintiff's speech, i.e, prevented Plaintiff from either (1) purchasing and operating another surveillance system shortly after his arrest, or (2) viewing, copying, and distributing the video images once he regained possession of the VCR. *See id.* at 1183 (court considers first "whether any evidence in the record supports the conclusion that the restraint actually chilled Plaintiffs' speech…."). Consequently, Plaintiff has failed to show that Defendant Gaitan violated a First Amendment right based on prior restraint.

Second, Plaintiff contends that Defendant Gaitan withheld the VCR for an unreasonable length of time in retaliation for Plaintiff capturing the VCR images showing the BCSO's treatment of Plaintiff. To show a First Amendment retaliation claim, a plaintiff must prove:

> (1) that the plaintiff "was engaged in constitutionally protected activity"; (2) that the defendant's actions caused the plaintiff "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity"; and (3) that the

7

"defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct."

*McCook v. Spriner Sch. Dist.*, 44 Fed. Appx. 896, 904 (10th Cir. 2002) (citations omitted). In this case, Defendant Gaitan assumes for the purpose of this analysis that operating a VCR in a place of business is a constitutionally protected activity. (Doc. 67) at 10. Nonetheless, a reasonable jury, viewing the evidence in the light most favorable to Plaintiff, could not find that withholding the VCR would chill a person of ordinary firmness from continuing to make VCR recordings at the Laundromat. In fact, Plaintiff actually purchased and operated another surveillance system shortly after he was arrested. Plaintiff has, therefore, failed to show that Defendant Gaitan violated the First Amendment by retaliating against Plaintiff for engaging in protected speech. In sum, the Court concludes that Defendant Gaitan is entitled to qualified immunity and summary judgment on Count IV of the First Amended Complaint.

IT IS ORDERED that

1. Defendant Adam Gaitan's Motion for Summary Judgment on Plaintiff's First Amendment Claim (Doc. 66) is granted;

2. summary judgment will be entered in Defendant Gaitan's favor on Count IV of the First Amended Complaint;

3. Count IV will be dismissed with prejudice; and

4. with the dismissal of Count IV, this case will be terminated.

_____
UNITED STATES DISTRICT JUDGE

8